IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

JAMES JOHNSON, )
 )
        Plaintiff, )
 )
v. ) No. 08-2614-WEB
 )
SEDGWICK COUNTY SHERIFF'S )
DEPARTMENT; BOARD OF SEDGWICK )
COUNTY COMMISSIONERS; and )
SHERIFF GARY STEED, )
 )
        Defendants. )
 )

## Memorandum and Order

This matter is before the court on the following motions: Plaintiff James Johnson's Motions for Order and Motion to Produce (Docs. 57, 62 and 69); and defendants' Motion for Summary Judgment (Doc. 67).

**Defendants' Motion for Summary Judgment** (Doc. 67).

Plaintiff, proceeding *pro se*, claims the defendants unlawfully discriminated against him by terminating his employment with the Sedgwick County Sheriff's Department. The First Amended Complaint (Doc. 21) alleges that the discrimination was on account of plaintiff's race, in violation of Title VII of the 1964 Civil Rights Act disability, and on account of a disability in violation of the Americans with Disabilities Act (ADA). Defendants move for summary judgment, arguing that plaintiff cannot establish the elements of either claim.

    I. *Facts*.

The defendants' motion for summary judgment sets forth a statement of facts with

appropriate references to the record as required by Federal Rule of Civil Procedure 56 and Local Rule 56.1. Plaintiff's response does not address or even refer to the defendants' statement of facts, nor does it contain any citation to evidence in the record. Doc. 71. Plaintiff has filed a collection of unexplained exhibits, including sheriff's department records, letters of reference, a 2001 psychological report, and educational records and citations. Doc. 72. Local rule 56.1 provides in part that "[a]ll material facts set forth in the statement of the movant will be deemed admitted for purposes of summary judgment unless specifically controverted by the statement of the opposing party." Even under the liberal standards of construction afforded *pro se* plaintiffs, plaintiff's failure to address the evidence means that defendants' statement of facts is uncontroverted for purposes of summary judgment. Based on the standards of Fed.R.Civ.P. 56 and D.Kan.R. 56.1, for purposes of the motion for summary judgment the court finds no genuine dispute as to the following facts.

1. Plaintiff James Johnson was hired as a Detention Deputy with the Sedgwick County Sheriff's Office in June 1998. He was terminated on September 25, 2007.

2. The Sheriff's Office historically posts a job description for a detention deputy which identifies a series of job responsibilities. In summary, this includes securing all exterior and security doors in the facility by visually monitoring, supervising and controlling movement of all people in the facility utilizing screens and monitors in Master Control; observing and controlling inmate movement within the housing unit by communicating with inmates either in person or over the intercom system; serving as first responder when there is a problem in a pod, fight, medical emergency, etc., and escorting inmates needing additional supervision or security and monitoring radio traffic. (Exhibit "A, B").

3. There is no distinction in the job description for deputies that work at a front desk area in the Lobby. (Exhibit "W").

4. Prior to his termination, James Johnson received job evaluations in May 2006 and May 2007. In the 2006 evaluation he received a score of 40 which placed him in the "satisfactory" category for job performance. In 2007 his score was 27 which by the Sheriff's Office standards rated him as "marginal." (Exhibit "C, D").

5. Plaintiff was disciplined on three occasions for alleged sleeping on the job between March 2006 and October 2006. He was suspended on April 11, 2006 for two days for sleeping while on duty in master control on March 21, 2006. (Exhibits "E, I"). His second suspension, on August 29, 2006 (Exhibit "H") was for five days for sleeping at the work release facility on August 14, 2006. (Exhibits "E, L"). His third discipline was a verbal counseling for sleeping at an in-service training session on October 4, 2006. (Exhibit "E").

6. Plaintiff was dismissed from his employment with the Sheriff's Office for the prior three disciplinary actions he had received for sleeping while on duty referenced in Statement of Facts, #5 and for three additional times he was observed sleeping while on duty; March 27, 2007, May 2, 2007 and September 18, 2007. (Exhibit "E").

7. Plaintiff claims that other Sheriff's Office employees were accused of "sleeping on the job on multiple occasions and were not terminated." Plaintiff claims that he was subject to disparate treatment because the other employees were not black and not disabled. (Doc. #21, Plaintiff's Amended Complaint).

8. Plaintiff has not provided any expert report pursuant to Rule 26 from a physician or any other medical or mental health provider that plaintiff's ADHD prohibits him from

3

performing an essential function of life. (Pretrial Order, Doc. #64, p. 14, ¶ 15, C).

9. On the date of his termination, September 25, 2007, plaintiff was within his "reckoning period" with the Sheriff's Office for five separate disciplinary violations between January 16, 2006 and September 25, 2007. (Exhibit "E"). The "reckoning period" is defined as "that period of time during which an employee is expected to have a record free of further violations of the rules and regulations, policies, and procedures." (Exhibit "Y, General Order 26.1.3").

10. As any one of the incidents for sleeping while on duty for March 27, 2007, May 2, 2007 and September 18, 2007 would have been the fourth offenses since plaintiff entered the reckoning period on January 1, 2006, the prescribed penalty was dismissal. (Exhibit "E", "Y").

11. Sleeping while on duty is a violation of Sheriff's Office Policy, VI. ADHERENCE TO DUTY, Ref. No. 22 which states "Employees shall remain awake while on duty or shall report their inability to do so to a supervisor." (Exhibit "Z").

12. At the time of his disciplinary actions described in factual contentions 5 and 6, plaintiff denied to Sheriff's Office supervisory staff that he had been sleeping while on duty. (Exhibit "N", "O", "J", "Q", "R", "S", "T" "U", "V").

13. According to disciplinary records kept by the Sheriff's Office, thirty detention deputies have been disciplined or counseled for sleeping while on duty from April 2001 through April 2010. Six deputies had more than one violation but no other deputy had six reportable incidents of sleeping while on duty prior to the three reportable incidents which led to Mr. Johnson's termination. (Exhibit "W").

14. No other deputies have been terminated for sleeping while on duty. (Exhibit "W").

15. Deputy Stone was the only deputy, other than plaintiff, that had three reportable incidents for sleeping while on duty. He was counseled for the first violation, received a written warning for the second and suspended for one day for the third. (Exhibit "W").

16. Mr. Johnson was counseled for his first, second and third violations of sleeping while on the job. He was suspended for two days for the fourth violation; suspended for five days for the fifth and counseled for the sixth. (Exhibit "W").

17. The position description for DETENTION DEPUTY published by Sedgwick County (Exhibits "A" and "B" in support of defendants Memorandum in Support of Summary Judgment) is applicable to all deputies assigned to the detention facility. (Exhibit "X").

18. Detention Deputies are assigned a variety of duty assignments (Exhibit "X") in the course of their employment which would include the following:

Lobby desk; Family visitation located in the lobby area; Family visitation on the internal (secured) side of the jail facility; Telephone response; Professional visitation monitoring; Master control (four deputies observing monitors of the facility and opening and closing doors); Booking area and processing; Property intake (taking prisoners from booking and preparing them for housing in the facility); Property Release (monitoring the release site and returning property to the prisoner); Pod control (twenty-one deputies located in the prisoner pods to monitor activity); Rover (five deputies to provide breaks to pod control deputies, transfer supplies, respond to emergencies and provide hallway security); Movement (two deputies to escort mentally ill prisoners, prisoners on suicide watch or violent or dangerous prisoners); Core officers (two deputies to work in court staging cells and movement to clinic areas); Clinic (two deputies to work in either the control booth or lobby of the jail clinic); Work Release Center (three deputies working the computer desk or rovers within the work release center).

19. All detention deputies are required to be able to perform the essential functions of all of the above described duty assignments and meet the requirements in the position descriptions. (Exhibit "X").

20. There is no permanent assignment for a detention deputy to staff the two lobby positions (Statement of Facts, #3 noted above). (Exhibit "X").

5

21. The practice of the Sheriff's Office is to rotate assignments of detention deputies every day or every few days to assist with security, prevent "burn out" for individual deputies and to minimize physical stress of the job. (Exhibit "X").

22. The lobby positions are often used for temporary placement of deputies needing a light duty assignment, usually because of injury, pregnancy or administrative order that he or she is not to have prisoner contact. There are a limited number of positions available for light duty assignment. (Exhibit "X").

23. Taking one of the lobby positions for a permanent assignment would create a significant hardship to the Sheriff's Office in placement alternatives in its rotation scheme and in finding a light duty assignment when appropriate. (Exhibit "X").

24. The lobby assignments have an important safety purpose. (Exhibit "X").

25. The lobby position has periods of inactivity. Visitation is cut off at 10:00 p.m. and is not allowed on weekends. Officers working third shift lobby assignments or on weekends likely will have no more and maybe less activity than other deputy assignments. Even periods where personal or professional visitation is allowed may see very little activity at certain times. (Exhibit "X").

II. *Summary Judgment Standards*.

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). An issue of fact is "genuine" if the evidence is such that it would allow a reasonable jury to resolve the issue either way. *Haynes vv. Level 3 Communications, LLC*, 456 F.3d 1215, 1219 (10th Cir. 2004). A fact is "material" when "it is essential to the proper

disposition of the claim." *Id*. Because it is a jury's function to determine the credibility of witnesses and to weigh conflicting evidence, on a motion for summary judgment the court must view the evidence and all reasonable inferences in the light most favorable to the nonmoving party.

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *See e.g., Adler v. Wal–Mart Stores, Inc*., 144 F.3d 664, 670–71 (10th Cir. 1998). The movant may meet its burden by pointing to a lack of evidence on an essential element of the non-moving party's claim. *Id*. If this burden is carried, the party opposing summary judgment cannot rest on the pleadings but must bring forth specific facts showing a genuine issue for trial. *See Nahno-Lopez v. Houser*, 625 F.3d 1279, 1283 (10th Cir. 2010). The facts must be admissible in evidence and must be sufficient that a rational jury could find for the non-movant on his claim. *Adler*, 144 F.3d at 670-71. "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Id*. at 671. "Unsubstantiated allegations carry no probative weight in summary judgment proceedings." *Bones v. Honeywell Intern., Inc.*, 366 F.3d 869, 879 (10th Cir. 2004). "To defeat a motion for summary judgment, evidence, including testimony, must be based on more than mere speculation, conjecture, or surmise."

III. *Summary of Arguments*.

Defendants first argue that plaintiff's ADA claim fails as a matter of law. They believe plaintiff has failed to show that his Attention Deficit Hyperactivity Disorder (ADHD) constitutes a disability, citing a lack of evidence that plaintiff's condition substantially limits any major life activity. They further argue that plaintiff fails to support the allegation that sleeping at work was

7

a symptom of his ADHD. Additionally, defendants contend that if a propensity for falling asleep is in fact a symptom of ADHD, then with or without reasonable accommodation plaintiff was unable to perform the essential functions of a jail deputy, such that his termination did not constitute unlawful discrimination. As for plaintiff's race discrimination claim, defendants argue there is no evidence that their proffered reason for terminating plaintiff's employment – a history of sleeping on the job – is a pretext for race discrimination.

Plaintiff's response alleges that he was diagnosed with ADHD but the defendant "willfully chose to neglect the ADHD documentation supplied by plaintiff in an effort to relinquish responsibility for correct accommodation and to further means for termination." Doc. 71 at 6. In his brief, plaintiff sets forth examples of what he says were accommodations by the defendants of other deputies with various conditions, such as allowing a deputy with a broken foot to work light duty. He contends he was treated differently than others needing accommodations. The brief also contains numerous examples of what plaintiff contends was adverse treatment of him by his supervisor, Lt. Brock. Plaintiff contends that Brock initially refused to let him perform light duty work in the lobby, telling him it was not appropriate because inmates were released in that area, but when plaintiff insisted that it would not be a problem Brock said he would check with the captain. Brock later emailed him back, saying the lobby would be added to his work assignment because the captain did not see a problem with it. But plaintiff believes "this was orchestrated and a deliberate act by Lieutenant Brock." He also contends that Brock assigned him to pod duty "to create a situation for me to fall asleep." Doc. 71 at 19. Plaintiff also "believe[s] that Lieutenant Brock used his influence as a lieutenant to get some of the sergeants to score me low on evaluation points." *Id*. at 23. Plaintiff's brief sets

forth numerous examples of what he contends were incidents of other deputies at the facility sleeping while on duty. Plaintiff says "[t]here are people that have more infractions and more serious infractions than I have been written up for," but they were not terminated. *Id*. at 23. Plaintiff also describes an incident at a local store, Hatman Jack's, where plaintiff was shopping for a hat when he ran into Sheriff Gary Steed. Plaintiff says the two exchanged pleasantries upon meeting, but plaintiff was later standing by the counter when the sheriff walked up and allegedly whispered to him, "I would put a purple dress on you." Plaintiff says he did not know what to think but responded, "You should try it on, I don't wear dresses." Plaintiff characterizes this as a criminal assault or the intentional infliction of emotional distress, and says he now believes the sheriff "was, in a passive-aggressive manner, letting me know that I was going to be terminated." Doc. 71 at 3.

IV. *Discussion*.

A. ADA Claim. The ADA prohibits an employer from discriminating against a qualified individual with a disability because of the individual's disability. 42 U.S.C. § 12112(a). To establish a prima facie case of discrimination under the ADA, a plaintiff must demonstrate: (1) that he is a disabled person as defined by the ADA; (2) that he is qualified, with or without reasonable accommodation, to perform the essential functions of the job held or desired; and (3) that he suffered discrimination by an employer or prospective employer because of that disability. *E.E.O.C. v. C.R. England, Inc.*, ___ F.3d ___, 2011 WL 1651372 (10th Cir., May 3, 2011) (citations omitted).

To establish that he is "disabled" within the meaning of the Act, the plaintiff must cite evidence that he has a physical impairment that substantially limits one or more major life

9

activities of the individual; or a record of such impairment; or that he has been regarded as having such an impairment.[1] *See* 42 U.S.C. § 12102(2). As noted in *Wilkerson v. Shinseki*, 606 F.3d 1256, 1262 (10th Cir. 2010):

> To be substantially limited in a major life activity, "an individual must have an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives." *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 198, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002). The impairment's impact must "be permanent or long term." *Id*. In analyzing whether something is a disability the court looks to whether it is a "physiological disorder or condition affecting one or more body systems, or any mental or psychological disorder." *Enwonwu v. Fulton-Dekalb Hosp. Auth.*, 286 Fed.Appx. 586, 603 (11th Cir.2008) (citing 29 C.F.R. § 1630.2(h)(1), (2)). A medical diagnosis is insufficient, rather, "the ADA requires plaintiffs to offer evidence that the extent of the limitation caused by their impairment in terms of their own experience is substantial." *Id*.

Plaintiff offers nothing to substantiate the contention that his ADHD condition amounts to a disability under the ADA. Merely asserting that he has been diagnosed with the condition does not establish a disability. "To qualify as disabled under this first, 'substantial limits' prong, one must do more than allege a physical or mental impairment. *See Verhoff v. Time Warner Cable, Inc.*, 299 Fed. Appx. 488, 491-92 (6th Cir.2008). The impairment must have a "substantially limit[ing]" effect on a major life activity. Because plaintiff fails to support the

---

[1] As noted by defendant, the ADA was amended effective January 1, 2009, to broaden the scope of the Act. Because the conduct challenged here occurred before the amendments, the court applies the law that was in effect at the time of the challenged acts. In other words, the ADA Amendments Act of 2008 does not have retroactive application. *See LaBrue v. Gab Robins North America, Inc.*, 2009 WL 2355785 (D. Kan., Jul. 29, 2009) (citing cases). *Cf. Hennagir v. Utah Dep't of Corr.*, 587 F.3d 1255, 1261, n. 2 (10th Cir.2009) (unnecessary to consider the effect of the ADA amendments because the challenged conduct took place before that).

claim of a disability by citing evidence of a substantial limitation on a major life activity, the defendant is entitled to summary judgment on plaintiff's ADA claim. Even if plaintiff could establish a disability within the meaning of the ADA, he has failed to cite evidence that some reasonable accommodation of the disability would have allowed him to perform the essential functions of a detention deputy. Plaintiff does not challenge the proposition that visual monitoring of inmates is an essential requirement for a jail deputy, and that an inability to stay awake would prevent a deputy from performing this function. Plaintiff says other employees were sometimes given light duty assignments as an accommodation for injury, and he argues that he could have worked in the jail lobby rather than monitoring inmates in the pods. While a temporary assignment to light duty would likely have been feasible, an employer is not required to accommodate an employee by creating what amounts to a new position. The "idea of accommodation is to enable an employee to perform the essential functions of his job; an employer is not required to accommodate a disabled worker by modifying or eliminating an essential function of the job." *Mathews v. Denver Post*, 263 F.3d 1164, 1168-69 (10th Cir. 2001) (citations omitted). Assuming plaintiff's propensity for falling asleep at work was a symptom of a disability, as he contends, then the symptom rendered him unable to perform one of the essential functions of a detention deputy. *Cf. Grubb v. Southwest Airlines*, 296 Fed.Appx. 383, 2008 WL 4538313 (5th Cir. 2008) ("courts have repeatedly approved of ADA-challenged discharges for falling asleep at work, particularly in safety-sensitive positions"). His ADA claim thus fails as a matter of law.

    B. <u>Race Discrimination Claim</u>.

Plaintiff also claims his termination was on account of race and that it violated his rights

under Title VII of the Civil Rights Act and 42 U.S.C. § 1981. Under the "McDonnell Douglas approach" applicable to discrimination claims based on circumstantial evidence, the plaintiff must first establish a prima facie case of discrimination or retaliation. *See McDonald-Cuba v. Sante Fe Protective Services, Inc.*, ___ F.3d ___, 2011 WL 1746204 (10th Cir. 2011). If plaintiff does so, the defendant then must articulate a legitimate, non-discriminatory reason for the adverse employment action. At that point, the burden shifts back to the plaintiff, who must prove by a preponderance of the evidence that the employer's reasons are a pretext for unlawful discrimination or retaliation. *Id.*

For purposes of summary judgment, the defendants do not dispute that plaintiff can establish a prima facie case of race discrimination. Rather, defendants cite plaintiff's alleged history of sleeping on the job as a non-discriminatory reason for his termination, and argue that plaintiff fails to cite any evidence to show that this reason was a pretext for racial discrimination.

A plaintiff can meet the burden of showing pretext "by demonstrating such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted nondiscriminatory reasons." *Swackhammer v. Sprint/United Mgmt. Co.*, 493 F.3d 1160, 1167 (10th Cir. 2007) (citation omitted). *See also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (pretext allows factfinder "to infer the ultimate fact of discrimination from the falsity of the employer's explanation."). Pretext may also be shown by providing direct evidence that the proffered rationale is false, or by showing that the plaintiff was treated differently from similarly-situated employees. *Swackhammer*, 493 F.3d at 1167–68.

Plaintiff's argument is essentially that he was treated differently from other deputies who slept on the job at the jail. In fact, his brief makes it sound as if there were few deputies who did not sleep at the jail. Plaintiff asserts in conclusory fashion that a number of named individuals slept while on duty and adds "[t]here were many others that I personally have witnessed sleeping and did not receive so much as a warning for this behavior." Doc. 71 at 12.[2] The first obstacle to plaintiff's assertions is that he fails to cite admissible evidence to support them. To survive summary judgment, a nonmovant must generally submit affidavits or other sworn testimony, with the submission setting out facts that would be admissible in evidence, showing that the affiant has personable knowledge and is competent to testify on the matters stated. *See* Fed.R.Civ.P. 56(c)(4). Plaintiff cites no affidavits or other sworn testimony to support the assertions in his brief. *See White v. Werholtz,* 2010 WL 4975556 (D. Kan., Dec. 2, 2010) (unsworn statements in a brief are insufficient evidence to defeat summary judgment). But even overlooking that point, he fails to show there were other deputies with a similar disciplinary history who were reported for sleeping but who not terminated. Plaintiff fails to address the fact that he had a total of six disciplinary actions for sleeping on duty, something the evidence shows no other deputy had. Defendants cite evidence that thirty detention deputies have been disciplined or counseled for sleeping while on duty from April 2001 through April 2010, with no other deputy having six reportable incidents like plaintiff. Defendants cite evidence that the department's personnel policies allowed for termination after the third such violation in a

---

[2] Plaintiff says Lieutenants could sometimes see deputies were sleeping but did not "call them down," though he concedes that "[c]loser to my termination date, I noticed that unfavorable workplace behaviors such as sleeping were verbally addressed and corrected while in my presence." Doc. 71 at 13.

reckoning period. According to the evidence in the record, Deputy Stone was the only deputy other than plaintiff with three reportable incidents for sleeping on duty. Stone was counseled for the first violation, received a written warning for the second, and was suspended for one day for the third. By contrast, plaintiff was counseled for his first, second and third violations of sleeping on the job. He was then suspended for two days for the fourth violation; suspended for five days for the fifth, and counseled for the sixth (for sleeping at an in-service training session). Additionally, plaintiff received a "marginal" job performance review in the year of his termination. In determining whether employees are similarly situated, a court should compare, among other things, the relevant employment circumstances, such as work history and company policies, applicable to the plaintiff and the intended comparable employees. *See e.g., Kendrick v. Penske Transp. Services, Inc.*, 220 F.3d 1220, 1232 (10th Cir. 2000). Plaintiff cites no evidence of any other deputy at the jail with a work history that included more than three violations for sleeping and a marginal job performance review. *Cf. Mensah-Sowah v. Bridgestone/Firestone, Inc.*, 1996 WL 540123, *2 (10th Cir., Sept. 25, 1996) (unpublished) (no evidence that other employees with a similar history of leave infractions were treated more favorably than plaintiff). Assuming it is true that other deputies at times slept on the job, plaintiff still cites no evidence to establish that there were other deputies with a similar disciplinary record and performance rating that were treated more favorably than plaintiff. Plaintiff contends "[t]here are people that have more infractions and more serious infractions than I have been written up for." Doc. 71 at 23. But he fails to provide competent evidence of such similarly situated employees and their treatment. Absent such evidence, the defendants' termination of plaintiff's employment gives rise to no inference of pretext or discrimination. Accordingly, the defendants' motion for

summary judgment will be granted.

**Remaining Motions**.

Plaintiff's Motion Requesting Jury Trial (Doc. 57). Plaintiff's request for a jury trial will be denied as moot in view of the court's determination above that the defendants are entitled to summary judgment under Rule 56.

Motion for Charges (Doc. 62). Plaintiff contends the "Hatman Jack's incident" with Sheriff Steed was a criminal assault and he asks the court "to charge the Defendant Gary Steed with" assault under K.S.A. § 21-3408. The motion will be denied. This court has no authority to initiate state criminal proceedings against a party to a civil action.

Motion For Production of Documents (Doc. 69). Plaintiff has filed a motion for the court to order the defendants to produce the names of the deputies disciplined for sleeping as well as their disciplinary files. This request for discovery comes out of time given there was a discovery deadline of September 6, 2010. Additionally, defendants' response shows that the material relevant to the discipline of other deputies was made available to plaintiff. Doc. 70 at 3. Plaintiff has not shown good cause for further discovery on the matter at this late date.

*Conclusion*.

The motion for summary judgment by Defendants Board of Sedgwick County Commissioner and Sheriff Gary Steed (Doc. 67) is GRANTED.[3] Plaintiff shall take nothing on his claims, and the action is dismissed on the merits.

---

[3] Plaintiff's claims against defendant "Sedgwick County Sheriff's Department" are likewise dismissed. As previously noted by the court, the Sheriff's Department is not a legally recognized entity that can be sued in Kansas. *See Wright v. Wyandotte County Sheriff's Dept.*, 963 F.Supp. 1029, 1035 (D. Kan. 1997) (sheriff's department is a subordinate government agency and is not an entity with the capacity to be sued).

Plaintiffs' Motion Requesting Jury Trial (Doc. 57), Motion for Charges (Doc. 62) and Motion for Production of Documents (Doc. 69) are DENIED.

IT IS SO ORDERED this  14th   Day of July, 2011, at Wichita, Ks.

s/Wesley E. Brown
Wesley E. Brown
U.S. Senior District Judge